DAVID ACKERMAN ET AL. V. GEORGE H. THUMMEL.

FILED APRIL 17, 1894.     No. 5580.

1. **The damages to owners of land assessed in establish-
   ing public roads,** whether the county is under township gov-
   ernment or the commissioner system, cannot lawfully be paid
   from the general fund of the county, but should be paid out of
   the road fund belonging to the road district in which the land
   taken for the highway is situated.

2. **An injunction lies at the suit of a taxpayer** of the
   proper county to restrain the issuance by the county clerk of a
   warrant on the county treasurer for an illegal or unauthorized
   purpose, and to enjoin the payment of such warrant by the
   county treasurer.

ERROR from the district court of Hall county. Tried
below before HARRISON, J.

*Charles G. Ryan* and *W. H. Thompson,* for plaintiffs in
error, cited: *Stuart v. Palmer,* 74 N. Y., 190; *People v.
O'Brien,* 111 N. Y., 1; *South Platte Land Co. v. Buffalo
County,* 7 Neb., 257; *State v. Ryan,* 70 Wis., 676; *Har-
wood v. Inhabitants of North Brookfield,* 130 Mass., 561.

*W. H. Platt* and *Abbott & Caldwell, contra,* cited: *Whit-
comb v. Reed,* 24 Neb., 50; *People v. Flagg,* 46 N. Y., 401;
*Sangamon County v. City of Springfield,* 63 Ill., 66; *Dennis
v. Maynard,* 15 Ill., 477; *People v. Power,* 25 Ill., 187;
*State v. Shawnee County,* 28 Kan., 431; *Normand v. Otoe
County,* 8 Neb., 18; *Johnson v. Hahn,* 4 Neb., 139; *Touzalin
v. City of Omaha,* 25 Neb., 817; *State v. Nemaha County,*
10 Neb., 32; *Doody v. Vaughn,* 7 Neb., 28.

NORVAL, C. J.

This was an action brought by the defendant in error, a
taxpayer of the city of Grand Island, to enjoin David
Ackerman, county clerk of Hall county, from issuing or

delivering to Henry E. Timkie a warrant on the general fund of said county for the sum of $400, awarded to said Timkie by the county board as damages sustained by the location of a public road over lands owned by him in Washington township in said county, and to restrain William Cornelius, the county treasurer, from paying said warrant. A general demurrer to the petition was overruled, and the defendants declining to further plead, and electing to stand on the demurrer, a perpetual injunction was granted by the court as prayed.

The facts set up in the petition, briefly stated, are these: The county of Hall is under township organization, and is divided in towns, one of which is called Washington township. In January, 1891, the county board of Hall county made an order establishing a public highway within the limits of Washington township, and not on any town line, which road passed over the real estate of Henry E. Timkie, one of the plaintiffs in error. Appraisers were duly appointed to ascertain and fix the amount of damages caused by reason of the location of the road, who appraised the damages sustained by Timkie at $300. Subsequently, in November, 1891, the county board fixed and assessed the damages incurred by said Timkie at $400, and said board, on the 15th day of January, 1892, by resolution, instructed the county clerk to draw a warrant upon the county general fund for said sum in favor of said Timkie. No petition has ever been presented by Washington township, or any one in its behalf, to the county board praying for the allowance of any sum by the county to aid in bearing the expense of opening and constructing said road, and the road taxes of said township, under the usual levy for road purposes, would be sufficient in any one year to pay all damages sustained by reason of the location of said road, as well as for all labor and material necessary to construct the same. The assessed valuation of the property of the county for the year 1891 was $2,766,162, and the

assessed valuation of the property of the city of Grand Island for said year was $1,342,240.

No question is raised as to the validity of the proceedings of the county board relating to the establishing of the road and the appraising of the damages sustained by Timkie by reason thereof. The sole question presented for decision is whether Hall county, or Washington township, or the road district in said township, should pay the damages resulting from locating and opening the highway in question.

Section 1 of chapter 78 gives to the county board the general supervision over public roads of the county, and the power to establish and maintain them.

Sections 2 and 3 define public highways and the width thereof, while other sections of the same chapter regulate the proceedings which shall govern the establishment, vacation, or alteration of public roads, and provide the procedure for ascertaining the damages of the land-owner.

Sections 39 to 43, inclusive, provide for an appeal to the district court from the assessment of damages, and regulate the proceedings on appeal.

Section 42 declares: "The amount of damages the claimant is entitled to shall be ascertained by said court in the same manner as in actions by ordinary proceedings, and the amount so ascertained shall be entered of record, but no judgment shall be rendered therefor. The amount thus ascertained shall be certified by the clerk of the county board, who shall thereafter proceed as if such amount had been by them allowed the claimant as damages."

Section 53 authorizes the county board to divide the county into road districts, and to change the boundaries thereof.

Sections 76 and 91 read as follows:

"Sec. 76. In counties not under township organization, one-half of all moneys paid into the county treasury from the several road districts in discharge of road tax shall con-

Ackerman v. Thummel.

stitute a county road fund, which shall be at the disposal of the county commissioners for the general benefit of the county, for road purposes; the other half of all the moneys paid into the county treasury from the several road districts, in discharge of road tax, and all money paid in discharge of labor tax shall' constitute a district road fund, which shall be paid by the county treasurer to the overseer of the road district from which it was collected, and expended by him only for the following purposes: First—For the construction and repair of bridges and culverts, and making fire guards along the line of roads. Second—For the payment of damages of the right of [way of] any public road. Third—For the payment of wages of overseers, and for the expense of procuring the necessary guideboards. Fourth—For the payment of the wages of commissioners of roads, surveyor, chainmen, and other persons engaged in locating or altering any county road, if the road be finally established or altered as hereinbefore provided. Fifth—For work and repairs upon road. *Provided*, That the county commissioners of counties not under township organization may levy the same rate of road tax upon the property within any incorporated city of the metropolitan class and cities of the first class as is levied upon the property situated within the several road districts, and all moneys paid into the county treasury in discharge of road tax levied upon property within the corporate limits of any such city shall constitute a part of the general road fund of the county, and be subject to the disposal of the county commissioners for the general benefit of the county and city, one-half of which shall go to the county for road purposes and one-half to the council of said cities to be used for road purposes.

"Sec. 91. In counties under township organization all moneys paid to the township treasurer in discharge of township road tax, and all money paid in discharge of labor tax, shall constitute a township road fund, which fund

shall be divided as follows: All of said fund shall be held by the township treasurer, subject to the order of the town board, excepting an amount, not to exceed one-fifth of the entire fund aforesaid, shall be paid by the town treasurer to the overseer of the district from which such tax is collected. The amount under the control of the town board as aforesaid shall be expended for the general benefit of the township, for road and bridge purposes. The amount under the control of the overseer shall be applied within his district as follows: First—For the construction and repair of bridges and culverts, and making fire guards along the lines of roads. Second—For the payment of damages for any right of way of any public road. Third—For payment of wages of overseers, and for necessary guide boards. Fourth—For the payment of wages of commissioners of roads, surveyor, chainmen, and other persons engaged in locating or altering any county road, if the road be finally established or altered as hereinbefore provided. Fifth—For work and repairs on roads."

So far as we have been able to discover there is no express statutory provision which directs that damages resulting from the location of a highway shall be paid out of the county general fund, nor is there any express enactment which provides how, or by whom, such damages assessed shall be paid. If such authority exists, it arises by implication. The legislature has made provision for taking of private property for highway purposes, and has given a mode for ascertaining the amount of compensation. It must be presumed that the damages assessed shall be paid. Else, why assess them? By section 77 of the general revenue law, the county board is empowered, among other things, to levy a tax for road purposes, not exceeding five mills on the dollar valuation, and this whether the county is under township organization or not. The legislature, by section 76 above quoted, has directed that one-half of the moneys paid into the road fund in counties not under

Ackerman v. Thummel.

township organization shall compose the county road fund, and is placed at the disposal of the county board for the benefit of the county for road purposes. The other half of the moneys which come into the county treasury in discharge of road tax is required to be paid to the overseer of the road district from which it was collected, to be expended by him for certain designated purposes, among other mentioned in the statute, "for the payment of damages for the right of [way of] any public road." In counties under township system of government, as will be seen by a perusal of section 91 already copied, there is no road tax at the disposal of the county board, but all moneys levied and collected in a township for road purposes constitute a township road fund, four-fifths of which are held by the township treasurer, to be disbursed under the directions of the town board for the benefit of the township for road and bridge purposes. The remaining one-fifth of the township road fund is under the control of the road overseer, to be expended by him within the district for five enumerated purposes, the first two of which are as follows: "First—For the construction and repair of bridges and culverts, and making fire guards along the lines of roads. Second—For the payment of damages for right of way of any public road." The legislature having set apart a certain portion of the revenues derived by taxation in counties under township organization, and those under the county commissioner system, for the payment of damages occasioned by the location of public highways, it is not unreasonable to infer, and we are constrained to decide, that it was the intention of the law makers that such damages should be paid out of the fund specially provided by statute for that purpose, and none other. In other words, while there is no express provision to that effect, damages assessed in consequence of laying out roads, whether the county is under township government or the other system, cannot be paid from the general fund of the county, but out

of the road fund of the road district in which the land taken for the highway is situated. (See *Whitcomb v. Reed,* 24 Neb., 50.)

Attention has been called by counsel to section 100 of the road law, which declares: " When it shall be necessary to build, construct, or repair any bridge or road in any town, which would be an unreasonable burden to the same, the cost of which will be more than can be raised in one year by ordinary road taxes in such town, the town board shall present a petition to the county board of the county, in which such town is situated, praying for an appropriation from the county treasury to aid in the building, constructing, or repairing of such bridge or road, and such county board may (a majority of all the members elect voting for the same) make an appropriation of so much for that purpose as in their judgment the nature of the case requires and the funds of the county will justify; said appropriation to be expended under the supervision of an authorized agent or agents of the county, if the county board shall so order.   In such case, where the county grants aid as aforesaid, the contract shall be let by the town board, under the provisions of sections 83, 84, and 85."   It is said that the language of this section, " to build, construct, or repair any bridge or road in any town," etc., is broad enough to include the costs of the right of way for a highway.   It is exceedingly doubtful whether this construction is tenable; but whether it is or not, it is unnecessary to determine, and we do not decide the point.   Assuming it should be so interpreted, still the ordering of the payment of the damages in this case out of the county general fund was without jurisdiction.   The county board under this section have no authority to appropriate money from the county treasury to assist a town in the building or constructing a road, except the board in a proper case is petitioned so to do by the town board.   It is alleged in the petition, and admitted by the demurrer, that no such petition was ever presented

to the supervisors of Hall county by the town board of Washington township. This section 100 adds strength to the interpretation we have placed upon sections 76 and 91. If the county board had authority, and it was their duty to construct roads and pay for their right of way out of the county treasury in counties under supervisors' system, it was useless to enact section 100. The legislature having authorized the appropriation of moneys from the county treasury for such purpose upon petition, all other modes are thereby excluded.

It is said, in effect, Washington township should not be made liable for the damages in this case, since the statute does not authorize a township to establish a public road, or to determine the amount of damage resulting from the location of a road. These considerations might be properly urged upon the legislature as reasons why the law should be amended, but the objections urged are insufficient to justify us in holding that the county is liable. The legislature, doubtless, might have vested the power in town boards to lay out roads, and determine the amount of compensation the land-owner shall receive. That it has not done so, but has clothed another tribunal with that authority, does not invalidate the law and cast the burden upon the county to pay the damages in controversy. Many of the provisions of the road and township organization laws are very crude and imperfect, and will have to be amended before these acts attain the stage of perfection; but the people must look for relief to the body empowered to enact and change statutes, and not to the courts.

It is finally insisted that plaintiff has mistaken his remedy; that he should have appealed from the decision of the county board. It is a sufficient answer to this suggestion to say that the statute does not authorize a taxpayer to appeal in such a case. Plaintiff's only adequate remedy was by injunction. (*Normand v. Otoe County*, 8 Neb., 18;

*Whitcomb v. Reed*, 24 Neb., 50.)   The decree of the court below is

AFFIRMED.

HARRISON, J., having decided the case in the district court, took no part in the above opinion.