T. E. HALL ET AL. V. STATE OF NEBRASKA, EX REL. FRED RENARD.

FILED MARCH 17, 1898. No. 9839.

1. **County Drainage: FUNDS.** The provisions of chapter 89, article 1, Compiled Statutes, examined, and *held* to require the formation of a special ditch fund, which alone is available for payments for improvements made entirely within a single county, under the provisions of said article, and that for the purpose of making such payments moneys can only be obtained from the county general fund by borrowing as provided by section 26 of said article. RAGAN, C., dissenting.

2. ——: ——: **MANDAMUS.** By mandamus a board of county commissioners cannot be compelled to provide, through a use of the

county general fund, for the payment of a warrant which, upon its face, requires that payment thereof, when made, shall be charged to a certain designated ditch fund.

ERROR from the district court of Burt county. Tried below before KEYSOR, J. *Reversed.*

*W. G. Sears,* for plaintiffs in error.

*H. H. Bowes, contra.*

RYAN, C.

The error alleged in this proceeding was the allowance of a writ of mandamus by the district court of Burt county. By assignment, the relator was the holder of a written instrument of the following form:

"No. 10.    STATE OF NEBRASKA, BURT COUNTY. $2,670.56.
                    "TEKAMAH, July 5th, 1889.

"Treasurer of Burt County: Pay A. E. Wyckoff, or bearer, twenty-six hundred seventy and fifty-six one-hundredths dollars, and charge to account of Peterson ditch fund.                    ᴗ L. J. MALMESTEN,
                                        "*Co. Clerk.*
                    "T. E. HALL,     .
                    "*Ch. Board Com'rs.*"

This warrant was presented to the county treasurer and indorsed not paid for want of funds. On it there were credited several payments, so that there remained a balance unpaid of but $1,025, when, in this action, there was made the application for a mandamus requiring the county board of supervisors of Burt county to levy a tax on the taxable property of said county and include the same in the levy for the year 1897, in a sufficient sum to pay the balance unpaid on said warrant. There was an answer, to the several paragraphs of which a general demurrer was interposed and, except as to one paragraph, exclusive of the general denial, sustained. With reference to the facts pleaded in this paragraph there

was a trial, which resulted in a finding adverse to the existence of such pleaded facts, and upon this finding and the ruling on the demurrer there was directed to issue a peremptory writ as prayed.

It was recited in the alternative writ that the above warrant was issued to A. E. Wyckoff for the construction of a ditch in Burt county, known as the Peterson ditch, and, on its face, the payment of this warrant when it, by the county treasurer, should be paid was required to be charged to account of "Peterson ditch fund." In the argument of the case it was conceded by both parties that the warrant in question had been issued under the provisions of chapter 89, article 1, Compiled Statutes. This article makes provisions that the county commissioners of any county may cause to be located and constructed, straightened, widened, altered, or deepened, any ditch, drain, or water course, when the same is necessary to drain any lot, lands, public or corporate road, or railroad, and will be conducive to the public health, convenience, or welfare. It is required that the petition, on which the county board may assume to act, shall be signed only by owners of lots or lands to be benefited by the proposed improvement. On presentation of such a petition the board may avail itself of the assistance of a surveyor or engineer, if it chooses so to do; but it shall view the line of the proposed improvement and determine by actual view of the premises along, and in the vicinity thereof, whether the improvement is necessary, or will be conducive to the public health, convenience, or welfare, and whether the line described is the best route, and shall report their findings, which shall be recorded by the county clerk. After these preliminaries the commissioners are required to direct the line to be established by a survey, and to be marked by stakes. The engineer or surveyor who is intrusted with the work just indicated is also required to return a schedule of all lots, land, public or corporate roads, or railways that will be benefited by the proposed improvement, whether such

benefited property abuts upon the improvement or not. With this schedule there is required to be filed an apportionment of a number of linear feet and cubic yards to each lot, tract of land, road, or railroad, according to the benefits which will result to each from the improvement, and an estimate of the cost of location and construction to each and a specification of the manner in which the improvement shall be made and completed. Within thirty days after the compliance by the surveyor or engineer with the above requirements the county clerk is required to fix a day for hearing, of which hearing notice issued by said clerk must be served upon each owner of property who will be affected by the proposed improvement. Subsequently, the county commissioners, when they find due service of the above notice has been made upon the owners of property to be affected, shall examine the report of the surveyor or engineer and the apportionment by him made, and, if the latter is in all respects fair and just according to benefits, shall approve and confirm the same. If they find said apportionment unfair or unjust, they shall so order and so amend it as to make it fair and just according to benefits. After the action indicated has been taken by the county commissioners, the persons specially affected by the proposed improvement may assert their rights and, by appeal, secure redress of their wrongs. In any event the several amounts are to be assessed against each tract in proportion to the benefits thereto. The provisions of section 19, chapter 89, article 1, Compiled Statutes, are as follows: "The work shall be done under the supervision of the surveyor or engineer appointed by the commissioners, and when a part not less than one-fourth of the portion included in any contract is completed according to the specifications, he shall give the contractor a certificate thereof, showing the proportional amount which the contractor is entitled to be paid according to the terms of the contract, and the county clerk shall, upon the presentation of such certificate, draw his war-

rant upon the treasurer for seventy-five per cent of the amount, and the treasurer will pay the same out of any funds in the treasury applicable to such purpose; *Provided*, That no proportional amounts shall be certified or paid unless the whole of such contract exceeds two thousand lineal feet." Section 26 of the article just referred to is in this language: "The board of county commissioners of any county in this state are hereby authorized whenever they deem it necessary to create a county ditch fund, to consist of taxes collected on county levies, and all balances remaining unexpended of special ditch funds arising from excess of assessments made on ditch improvements after the expenses thereof have been fully paid, and the commissioners are hereby authorized, whenever necessary, to borrow from the county general fund for the benefit of the above named ditch fund, and all money so borrowed shall be, as soon as practicable, returned to the county general fund." It is perhaps well to say that in this entire article there is to be found no provision authorizing the levy of a general tax for the payment of improvements of the class therein contemplated, except where such improvement is located in more than one county. When this is the case the board of commissioners of each county is specially authorized to levy a general tax, not exceeding one mill on the dollar of the assessed valuation of the county, sufficient for the location and construction of such portions of the respective ditches as may be located by them, or by the commissioners of two or more counties, as may be apportioned to such county, and the removal of any obstruction that may accumulate in any portion of any ditch. (Compiled Statutes, ch. 89, art. 1, sec. 25.)

The reference in section 26 to "taxes collected on county levies" obviously refers to such taxes as may be collected under the provisions of section 25, and to none other. Under the provisions of section 26, the board of county commissioners, if it deems such a course advisable, may create a special fund made up of these taxes

and all balances remaining unexpended of special ditch funds arising from excess of assessments made on ditch improvements after the expenses thereof have been fully paid. Whenever it is necessary, the county commissioners are authorized by section 26 to borrow from the county general fund for the benefit of said ditch fund, but all money so borrowed shall be, as soon as practicable, returned to the county general fund. The provisions of section 19 have been quoted, and the scope of this law quite fully described, to show that when the proceeds of the special assessments come into the hands of the county treasurer, they are regarded by the statute as constituting a special fund to be applied in the payment of the improvement as it progresses, and the requirement that the county treasurer shall make these payments is in no degree dependent upon the action of the board of county commissioners authorizing such payments. It seems, however, that the legislature apprehended that under certain circumstances special funds applicable to payments for improvements of this character might properly be placed under the control of the board of county commissioners, and in that event the board was authorized, in a certain specified manner, to create a county ditch fund. It was also contemplated by the legislature that emergencies might require the use of more money than such ditch fund might contain, and in the event of such contingency arising there was given a discretion to the county board to borrow from the general fund for the benefit of the ditch fund, but in that event the money borrowed must be returned to the county general fund as soon as practicable. In every part of this article the ordinary means of paying for improvements by it contemplated are required to be treated as constituting a special fund available for the limited purpose indicated, and for no other.

The record in this case discloses that the warrant, for the payment of which it is sought to compel an assessment of all the taxable property of the county, was issued

for work performed by A. E. Wyckoff in the construction of what is known as the Peterson ditch, and on the face of the warrant itself the treasurer of said county is re- quired to charge the amount thereof, when paid, to the "account of the Peterson ditch fund." If there shall issue a writ of mandamus as prayed, the supervisors of Burt county will be compelled to levy a tax on the tax- able property of the county at large, sufficient to pay the balance due on this warrant. In effect, the board of supervisors of Burt county, in that event, will be re- quired to increase the county general fund by a tax suf ficient to pay this warrant. The statute has vested in the board the power to resort to the general fund for the purpose of reinforcing the county ditch fund, only by borrowing what may be necessary for that purpose, and whether or not even this shall be done is a matter left entirely discretionary with the board, but in any event the money taken from the general fund must be returned thereto as soon as practicable. The obvious intention of the legislature that from parties specially benefited by the improvement a special fund shall be created, the re- quirement in the warrant itself that the payment of it, when made, shall be charged to a specially designated ditch fund, and the refusal of the county board to bor- row from the general fund to reinforce the special ditch fund, would afford sufficient ground for a refusal to issue a writ of mandamus to compel payment of this warrant to be made out of the county general fund, even if therein there were sufficient moneys available for that purpose. (*Ackerman v. Thummel,* 40 Neb. 95; *Palmer v. Vance,* 44 Neb. 348.) When, however, in addition to this require- ment, it is sought by mandamus to compel the assess- ment and collection of a general county tax in order that the above questions may become living issues, this relief must be denied. The judgment of the district court is therefore reversed and this proceeding is dismissed.

JUDGMENT REVERSED AND CAUSE DISMISSED.

RAGAN, C., dissents.